Date signed September 15, 2010



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | |
|---|---|---|
| In Re: | * | |
| Darren Lee Beachley | | |
| Sherri Lynn Beachley | * | Case No.   08-20134-TJC |
| | * | Chapter   13 |
| Debtors | * | |
| ************************************ | * | |
| Countrywide Bank, FSB | * | |
| | * | |
| Plaintiff | * | |
| vs. | * | Adversary   No. 09-00108 |
| Darren Lee Beachley | * | |
| Sherri Lynn Beachley | | |
| Nancy Spencer Grigsby | * | |
| Defendants | * | |

**MEMORDANDUM OF DECISION**

Before the Court is a motion for summary judgment filed by Plaintiff Countrywide Bank,

FSB ("Plaintiff") and a cross-motion for summary judgment filed jointly by Debtor-Defendants

1

Darren Lee Beachley and Sherri Lynn Beachley ("Debtors") and Defendant Nancy Spencer Grigsby, the Chapter 13 Trustee (the "Trustee") (the Debtors and the Trustee are collectively referred to herein as the "Defendants"). The parties agree that there are no material facts in dispute and the matter is ripe for disposition on motion. The Court held a hearing on the cross-motions on August 10, 2010. For the reasons set forth herein the Court will grant Defendants' motion for summary judgment and deny Plaintiff's motion.

MATERIAL FACTS NOT IN DISPUTE

Defendant Sherri L. Beachley acquired real property located at 20 East G Street, Brunswick, Maryland 21716 (the "Property") from Stephanie J. Sanborn in fee simple as sole owner pursuant to a deed of trust dated August 26, 2005 and recorded on September 9, 2005. On that same day, Ms. Beachley recorded and granted two security interests and deed of trusts in the Property. Ms. Beachley granted the first security interest and deed of trust to First Guaranty Mortgage Corporation for a loan in the amount of $236,000 ("FGMC First Deed of Trust"). Ms. Beachley granted the second security interest and deed of trust again to First Guaranty Mortgage Corporation for a loan in the amount of $59,000 ("FGMC Second Deed of Trust").

Months later, Ms. Beachley granted a security interest and deed of trust to Fidelity Mortgage for a $69,000 loan on March 30, 2006, and recorded on April 12, 2006 (the "Fidelity Deed of Trust"). This loan satisfied and released the FGMC Second Deed of Trust.

Ms. Beachley conveyed a deed dated September 20, 2007 from herself, as sole owner, to herself and Defendant Darren Lee Beachley in fee simple as tenants by the entirety with no consideration. On the same day, the Debtors granted a security interest in the Property to Countrywide Home Loans, Inc. for a $297,648 loan ("Countrywide HL's Deed of Trust"). This

loan satisfied and released the FGMC First Deed of Trust and the Fidelity Deed of Trust. Countrywide HL's Deed of Trust was never recorded in the land records.

On February 15, 2008, the Plaintiff loaned the Debtors $302,112 secured by a deed of trust executed on the same day ("Plaintiff's Deed of Trust").  Plaintiff's Deed of Trust was never recorded against the Property.  Plaintiff's Deed of Trust paid off in full Countrywide HL's Deed of Trust.

On August 8, 2008, the Debtors filed for chapter 13 bankruptcy relief.  In their schedules, the Debtors did not include Plaintiff's claim as a secured loan and instead listed it in Schedule F, Creditors Holding Unsecured Nonpriority Claims.  *See* Docket No. 1.  The Debtors also objected to the proof of claim filed by the Plaintiff (Claim No. 9).[1]  The Court denied the Debtors first chapter 13 plan on December 17, 2008 because the plan was not sufficiently funded to the extent of the Debtors' equity in the Property.  While the second plan was pending before the Court[2], the Plaintiff filed this adversary proceeding against the Defendants.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a), and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## CONCLUSIONS OF LAW

---

[1] The Trustee filed the original proof of claim for Countrywide Home Loans, Inc. on December 15, 2008.  The Debtors objected to the proof of claim filed by the Trustee arguing that Debtors did not owe a debt to Countrywide Home Loans, Inc. that the proof of claim lacked documentation evidencing a debt, and that the Trustee did not have standing to file a proof of claim for a creditor.  Thereafter, Countrywide Home Loans, Inc. filed an amended proof of claim on January 29, 2009, by counsel.  Finally, on March 9, 2009, Countrywide Bank FSB—the Plaintiff here—amended the claim, through counsel.

[2] The Debtors' have filed a Third Amended Chapter 13 Plan (Docket No. 48).  The confirmation hearing on the plan has been deferred until the resolution of this adversary proceeding.

Plaintiff contends that it is entitled to receive an equitable lien on the Property in the amount of $302,112. Alternatively, Plaintiff seeks a determination that it is equitably subrogated to Countrywide HL's Deed of Trust, which in turn is equitably subrogated to FGMC First Deed of Trust and the Fidelity Deed of Trust, in the amount of $298,762.49. Defendants contend, among other points, that neither an equitable lien nor subrogation is available to Plaintiff because of the application of § 544(a)(3). This Court agrees with Defendants that the transfer of their interest in the Property under the Plaintiff's Deed of Trust is avoidable under § 544(a)(3)[3] and that neither an equitable lien nor subrogation survives under § 544(a)(3).[4]

The applicable standards governing a motion for summary judgment are well established.

> In bankruptcy, summary judgment is governed in the first instance by Federal Rule of Bankruptcy Procedure 7056, which expressly incorporates into bankruptcy proceedings the standards of Federal Rule of Civil Procedure 56. A court may award summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *In re Apex Express Corp.,* 190 F.3d 624, 633 (4th Cir.1999); *see also* Fed. R. Civ. Proc. 56(c) (providing that award of summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

---

[3] As pertinent here, 11 U.S.C. § 544 of the Bankruptcy Code provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
> \* \* \* \* \* \*
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

[4] All statutory references hereinafter are to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as currently in effect, unless otherwise noted.

> law"). In evaluating a summary judgment motion, a court "must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant." *Apex Express Corp.,* 190 F.3d at 633. In so doing, a court is not entitled to either weigh the evidence or make credibility determinations. *See Anderson,* 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."). If the moving party is unable to demonstrate the absence of any genuine issue of material fact, summary judgment is not proper and must be denied. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Honor v. Booz-Allen & Hamilton, Inc.,* 383 F.3d 180, 185 (4th Cir.2004).

*In re French*, 499 F.3d 345, 351-352 (4th Cir. 2007).

The extent to which a trustee may exercise the rights of a bona fide purchaser under § 544(a)(3) is governed by applicable state law. *Glanz v. RJF International Corp.*, 205 B.R. 750, 753 (Bankr. D. Md. 1997). Accordingly, the Court applies Maryland law to determine whether the Trustee may avoid the transfer of the Property under the Plaintiff's Deed of Trust and defeat Plaintiff's claim for an equitable lien or equitable subrogation.

In Maryland, "legal title to land does not pass until a deed is properly executed and recorded . . . until this is done a vendee's equity in property is subject to destruction by a conveyance of the legal title to a bona fide purchaser without notice." *Bourke v. Krick*, 304 F.2d 501, 504 (4th Cir. 1962) (citations omitted). Specifically, in Maryland every deed, when recorded, takes effect from its effective date (i.e., the date of delivery), as against the grantor and any purchasers with notice of the deed. Md. Code Ann. Real Prop., § 3-201 (1974).[5] A recorded

---

[5] Md. Code Ann. Real Prop., § 3-201 (2002) provides:

> The effective date of a deed is the date of delivery, and the date of delivery is presumed to be the date of the last acknowledgment, if any, or the date stated on the deed, whichever is later. Every deed, when recorded, takes effect from its effective date as against the grantor, his personal

5

deed also takes effect from its effective date as against the grantee of a subsequent deed unless the grantee of the subsequent deed accepted the deed in good faith, without constructive notice, for good and valuable consideration, and recorded the deed first. Md. Code Ann. Real Prop., § 3-203 (2002).[6]

>The trustee's status under § 544(3) is that of a hypothetical bona fide purchaser:
>
>>As a hypothetical bona fide purchaser, the trustee is deemed to have paid value for the …property and is deemed to have perfected (i.e., recorded) his interest as legal title holder in the subject property as of the date of the bankruptcy petition's filing. The trustee also has the status of a hypothetical bona fide purchaser who is deemed to have searched the title of the . . . property as of the petition filing.

*Midlantic National Bank v. Bridge*, 18 F.3d 195, 204 (3rd Cir. 1994) (trustee's avoiding power under § 544(3) defeats a claim for equitable lien and equitable subrogation under New Jersey law).

As a hypothetical bona fide purchaser, the trustee in bankruptcy takes a perfected legal title of the property as of the date of the petition for value and without notice of any prior

---

representatives, every purchaser with notice of the deed, and every creditor of the grantor with or without notice.

[6] Md. Code Ann. Real Prop., § 3-203 provides:

>Every recorded deed of trust or other instrument takes effect from its effective date as against the grantee of any deed executed and delivered subsequent to the effective date, unless the grantee of the subsequent deed has:
>   (1) Accepted delivery of the deed or other instrument:
>   (i) In good faith;
>   (ii) Without constructive notice under § 3-202; and
>   (iii) For a good and valuable consideration; and
>   (2) Recorded the deed first.

unrecorded lien.[7]  Here, the date of the petition was August 8, 2008.  Plaintiff's Deed of Trust was not recorded on that date.  Therefore, the Trustee takes free and clear of Plaintiff's claims.  Accordingly, the Debtors' transfer of their interest in the Property pursuant to Plaintiff's Deed of Trust is avoidable under § 544.  Similarly, the Plaintiff's claims for an equitable lien and for equitable subrogation also fail, because such claims would not survive against a bona fide purchaser.

Plaintiff does not seriously dispute that the foregoing describes the effect of the application of § 544(a)(3) on an unrecorded deed of trust.[8]  Plaintiff contends, however, that § 544 is intended to benefit the unsecured creditors, not the Debtors, and therefore the Court should only avoid the transfer up to the amount of the unsecured creditor claims.  This contention fails for several reasons.

First, it is not supported by the language of § 544.  That section empowers the trustee to "avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . a bona fide purchaser of real property . . . that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case . . . ."  11 U.S.C. § 544(a)(3).  Under the statutory language, the transfer either is voidable or not.  The statute makes no distinction or accommodation for voiding a transfer up to the amount of the

---

[7]  "[I]t would be an impractical and onerous burden to require the trustee to actually pay value for every subject property or to actually take all the steps necessary to record the interests.  The foregoing language of 544(a)(3) intimates that Congress had recognized this burden and accordingly had crafted the statute to eliminate it."  *Midlantic National Branch v. Bridge*, 18 F.3d 195, FN7 (3rd Cir. 1994).

[8]  Plaintiff contends that the Debtors do not have standing to avoid the transfer under § 544; that right can only be sought by a Trustee.  Here, however, the Trustee is a party to the adversary proceeding and seeks to avoid the transfer for the benefit of the estate.

claims of unsecured creditors of a debtor. Moreover, not only is such a result inconsistent with the statutory language, it is contrary to the intended operation of the statute: a bona fide purchaser would seek to avoid a prior unrecorded deed in its entirety and it would be inconsequential to the bona fide purchaser whether general unsecured creditors of the grantor are paid.

Moreover, Plaintiff's contention is not supported by Maryland law. Under Md. Ann. Code Real Prop., § 3-203, the deed of a bona fide purchaser for value that is recorded first takes effect against a prior deed or other instrument. The statute makes no distinction or accommodation for limiting the effect of the bona fide purchaser's deed to the amount of unsecured creditors or the financial condition of the grantor.

Plaintiff points out that the Debtors have paid into their Chapter 13 plan an amount that is sufficient to pay the unsecured creditors in full.[9] Plaintiff contends therefore that there is no need for the Trustee to avoid the transfer under Plaintiff's Deed of Trust since the Court can confirm the plan and the Trustee can pay the accumulated plan payments to the unsecured creditors. In that way, according to the Plaintiff, the unsecured creditors will be paid in full and the Plaintiff can retain its interest under Plaintiff's Deed of Trust. Plaintiff's contention fails.

The short answer is that Plaintiff again seeks to apply § 544 in a manner that is inconsistent with its plain language. As stated above, a transfer is either voidable or not, and the statute makes no distinction between avoidance in cases where unsecured creditors will be paid all or most of their claims and cases where they will not.

---

[9] A chapter 13 debtor must commence making plan payments 30 days after the date of filing the plan or the petition date, whichever is later. *See* 11 U.S.C. 1326(a)(1).

8

But Plaintiff's contention also misses an important point: Given the application of § 544 to the unrecorded Plaintiff's Deed of Trust, Plaintiff is an unsecured creditor in this bankruptcy case. Indeed, at the time the Debtors filed the case, they treated the Plaintiff's claim as unsecured. *See* Schedules A, E; Docket No. 1 at 8,17. The monthly payment under Plaintiff's note is $1,811.31. Docket No. 31-13. The Debtors did not include the $1,811.31 on Schedule J, which lists the Debtors' monthly expenses. The Debtors' Schedules I and J reflect that the Debtors had $1,824.21 of income over expenses each month. Docket No. 1 at 23. Obviously, had the Debtors included the $1,811.31 monthly payment under the Note on Schedule J, their schedules would reflect almost zero net income each month.

The Debtors' plan directs the entire amount of the $1,800 net monthly income as plan payments. *See e.g.*, Docket No. 48. If the Debtors treated the Plaintiff's claim as secured and included the monthly payment of $1,811.31 on Schedule J, they would have had no income available for plan payments and no plan payments would have been made to the Trustee that would be available for distribution to unsecured creditors under the plan. Thus, unsecured creditors may receive a sizeable distribution under the plan, but that is only because the Debtors have treated the Plaintiff's claim as unsecured from the commencement of this case.

Further, Plaintiff will receive its share of the value of the Property along with the other unsecured creditors through plan payments. Under the "best interest of creditors test", a chapter 13 plan cannot be confirmed unless:

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 . . . on such date.

9

11 U.S.C. § 1325(a)(4). This means that the Debtor's plan cannot be confirmed unless the distributions under the plan are equal to or greater than the amount the unsecured creditors would receive in a hypothetical chapter 7. Upon the avoidance of Plaintiff's Deed of Trust, the value of the Property must be taken into account in making that determination. And Debtors concede that if the Court avoids the transfer under Plaintiff's Deed of Trust, Plaintiff will hold an unsecured claim equal to the amount owed under the Plaintiff's note as of the petition date. Plaintiff, then, on account of its unsecured claim, must receive its share of the value of the Property, as reflected in a hypothetical chapter 7 case, through the payments proposed under the Debtors' plan.

Once Plaintiff's claim is included as an unsecured claim, the Debtors will be required to make substantial future payments into their plan, in an amount to be determined, and the amount they have paid into the plan thus far is merely a small portion of that total amount.[10] Accordingly, it is immaterial that the amount the Debtors have paid thus far into their plan is sufficient to pay the unsecured creditors in this case other than the Plaintiff's claim.

## CONCLUSION

The Court will enter an order consistent with this Memorandum of Decision.

CC: Debtors
     Debtors' Counsel
     Chapter 13 Trustee
     Plaintiff
     Plaintiff's Counsel

**END OF MEMORANDUM OF DECISION**

---

[10] The Debtors current proposed plan provides for total funding of $171,300. *See* Docket No. 48 at p.1. The total amount of the Debtors' unsecured claims is approximately $25,000 without regard to Plaintiff's claim. *See* Claims Register. As stated, the confirmation hearing on the plan has been deferred until the resolution of this adversary proceeding.